IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Chapter 11 |
| SSW COMPANY, *et al.*,[1] | Case No. 20-20234<br>(Joint Administration Requested) |
| Debtors. | Document No. ____ |

**DECLARATION OF MALVIN G. SANDER IN SUPPORT OF**
**CHAPTER 11 PETITIONS OF SSW INTERNATIONAL, INC., *ET AL*.**

I, Malvin G. Sander, hereby declare under penalty of perjury:

1. I am the Senior Vice President, General Counsel and Secretary of SSW Holdings, Inc. f/k/a ISSI Holding, Inc. ("SSW Holdings"), SSW, Inc. f/k/a International Steel Services, Inc. ("SSW, Inc."), SSW Company f/k/a ISSI Company ("SSW Company"), SSW International, Inc. f/k/a Magnetics International, Inc. ("SSW International"), and SSW Partnership f/k/a American Iron Oxide Company ("SSW Partnership" and, collectively with SSW Holdings, SSW, Inc., SSW Company, SSW International, the "Debtors"). In those capacities, I have direct knowledge about and involvement in the management of various aspects of the Debtors' remaining business affairs. I am an attorney and am licensed to practice before the courts of the Commonwealth of Pennsylvania. I have personal knowledge of the Debtors' history and current status.

2. Concurrently with the filing of this declaration (the "Declaration"), on the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: SSW International, Inc. (9503); SSW Holdings, Inc. (2262); SSW, Inc. (4222); SSW Company (4685); and SSW Partnership (6440). The location of the Debtors' service address is: Building 5, Suite 400, 651 Holiday Drive, Pittsburgh, PA 15220.

Code"), in the United States Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court"), thereby commencing the above-captioned chapter 11 cases.

3. I submit this Declaration to assist the Bankruptcy Court and other parties in interest in understanding the circumstances that led to the commencement of these chapter 11 cases and in support of the Debtors' chapter 11 petitions for relief.

4. Except as otherwise indicated herein, all facts set forth in this Declaration are based on my personal knowledge, my knowledge and review of relevant documents (including the Debtors' books and records), or my opinion based on my experience, knowledge, and information concerning the Debtors' history and its current financial condition. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtors.

5. The Debtors have no employees and own no real property. The Debtors have limited personal property, primarily consisting of cash, insurance receivables, contract rights to proceeds arising from the sale of its branch in India, contract rights to proceeds arising from the sale of an acid regeneration plant in China, and an equity interest in a Chinese joint venture with Angbang Steel for which SSW, Inc. previously provided technical support. The Debtors have no secured debt.

6. I am compensated in my role as Senior Vice President, General Counsel and Secretary, in connection with my services in advising and managing the Debtors at the monthly rate of $8,000. The Debtors also compensate their former Financial Advisor, Craig D. Choate, in connection with his financial advice and preparation of financial statements and treasury function at the monthly rate of $4,000. The Debtors intend to continue to use my and Choate's services in those roles during these chapter 11 cases.

7. Due to the Debtors' financial condition and lack of ongoing business operations, the Debtors are not seeking extensive relief in the form of first day economic motions typically filed in chapter 11 cases. Nevertheless, the Debtor has filed several administrative motions relevant to the conduct of these chapter 11 cases which will enable the Debtors to efficiently administer their estates and affairs; namely, a motion seeking to file a combined list of creditors in connection with the petitions as well as a motion for joint administration of these cases.

8. The purpose of these chapter 11 cases is to insure an equitable distribution to holders of allowed claims against the Debtors. To that end, it will be necessary to resolve the claims of PVS Steel Services, Inc., and PVS ISSI, Inc. (collectively "PVS") in the litigation captioned *PVS Steel Services, Inc., et al. v. SSW Inc., et al.*, Case No. N19C-05-053 AML CCLD, which is pending in the Superior Court of the State of Delaware.

9. Part I of this Declaration provides an overview of the Debtors' corporate histories. Part II of this Declaration summarizes the circumstances leading to the commencement of these chapter 11 cases. Part III discusses the objectives of these chapter 11 cases.

**I.    Corporate History**

10. International Steel Services, Inc. ("ISSI"), now SSW, Inc., was founded in 1989 by Walter Sieckmann, Satish Wadhawan, and Paul Songer. Each has a long and respected career in the steel industry, with an emphasis on engineering, construction, and operations. Prior to 1989, Mr. Sieckmann was the head of Pennsylvania Engineering Corporation ("Pennsylvania Engineering"), a premier steel industry engineering and construction firm. During Mr. Sieckmann's time as the head of Pennsylvania Engineering, that company acquired the rights to

develop a process (acid regeneration) for regenerating liquid steel waste (an environmental hazardous waste) into hydrochloric acid (used in the steel pickling process) and a saleable by-product, iron oxide, used in many applications such as magnetic devices.

11.     The operation of an acid regeneration plant begins with the transportation of ferrous chloride, commonly called waste pickle liquor, from a steelmakers' pickle line to storage facilities at an acid regeneration plant. The waste pickle liquor is then regenerated by heating it in a roaster to produce 18% hydrochloric acid (returned to the steelmaker for use in the pickle line), and ferric oxide, sold to third party customers to be made into a broad range of products, frequently having magnetic applications.

12.     Upon the dissolution of Pennsylvania Engineering in the late 1980's, ISSI became a partial successor to its business. Shortly thereafter, ISSI signed its first contract with the Magnetics Division of Inland Steel USA and began construction of ISSI's first acid regeneration facility, known as Magnetics International (now the Debtor SSW International). ISSI purchased Magnetics International, in 2000.

13.     During the late 1990's, ISSI's management decided to supplement its profitable but variable engineering and construction income (designing and building plants) with a more consistent income stream. As a result, ISSI built its own acid regeneration plants and provided outsourcing services to its steel customers under long term service contracts. By 2013, ISSI had in excess of 30 pickling lines for major US steel producers under long term contracts and it had built over 50 acid regeneration plants world-wide through its engineering group.

II.     **Events Leading to Commencement of these Chapter 11 Cases**

14.     Mr. Sieckmann, his partners and his team for 30 years built ISSI's world-wide business. After reaching 80 years, Mr. Sieckmann decided to divest the business, hopefully

to an acquirer that would continue to grow the business, ideally resulting in a synergistic advantage to the buyer and continue the employment of its staff, engineers and operating personnel.

15.    In late 2012, the Debtors' retained the services of EdgePoint Capital Holdings, a leading investment banking firm serving middle market companies. Under EdgePoint's direction, the Debtors prepared a Confidential Information Memorandum which was distributed, with the guidance of EdgePoint, to possible purchasers of the Debtors' businesses, one of which was PVS Chemicals, Inc. ("PVS Chemicals").  On December 6, 2012, ISSI Holdings, Inc. (now SSW Holdings, a Debtor in these cases) and PVS Chemicals executed a Mutual Non-Disclosure Agreement.

16.    For the next two years, PVS Chemicals performed intensive due diligence including attending many meetings with senior managers of the Debtors and numerous inspection trips to the Debtors' operating facilities.  During that period of due diligence, the Debtors provided PVS Chemicals thousands of pages of financial and operating documentation and responded to questions and requests for information made by PVS Chemicals.

17.    A definitive Purchase and Sale Agreement was executed by the Debtors and PVS Chemicals on December 15, 2014 (the "First Agreement").  In January 2015, PVS Chemicals terminated the First Agreement because the prior board approval of a joint venture partner, at the time of the execution of the First Agreement, had been discussed and agreed upon, but had not been formally obtained.

18.    After PVS terminated the First Agreement, in January 2015, there ensued approximately two and a half years of additional negotiation, plant visits, production of financial and operating documentation, and meetings with the Debtors' senior management.  Ultimately, on May 8, 2017, the parties reached a new Purchase and Sale Agreement (the "Second Agreement").

At the time of the closing of the sale of the Debtors' U.S. business to PVS Chemicals in 2017, the Debtors owned four acid regeneration plants in Indiana and Pennsylvania and had over 30 pickle lines under long-term service contracts.

19. In early March 2018, many months after the closing with PVS Chemicals, the Debtors received two letters from PVS demanding payment from the Debtors on account of alleged defaults under the Second Agreement. Although this Declaration is not intended to provide a substantive recitation of the merits of either Debtors' or PVS's position on the issues identified in PVS's letters, the Debtors responded in 2018 to PVS's letters with comprehensive facts and evidence demonstrating that the PVS claims were not meritorious.

20. On May 7, 2019, PVS filed a Complaint against Debtors in the Superior Court of the State of Delaware (the "Delaware Action") claiming damages arising from the alleged defaults. The Debtors have filed an Answer and Counterclaim in the Delaware Action, in which they asserted defenses and significant counterclaims against PVS. To date, however, no substantive proceedings or significant discovery has taken place or been agreed upon in the Delaware Action.

21. The Debtors have made numerous requests to PVS to meet to resolve the Delaware Action, most recently on January 6, 2020, in a communication to PVS's litigation counsel, "to discuss a settlement proposal." This January 6th request was but the latest of several attempts by the Debtors to meet with PVS and settle the Delaware Action. The first request was made on June 11, 2019—the very day that the Debtors retained litigation counsel. These communications were followed by written and telephonic communications between the Debtors' counsel and PVS's litigation counsel. On November 21 and December 3, 2019, requests were made for a meaningful settlement meeting from the Debtors' counsel to PVS's General Counsel

(four telephone and two emails), to which no replies were received. All responses from PVS's litigation attorney to the Debtors' litigation attorney were essentially verbatim with his June 12, 2019 email, which stated, "in the absence of a serious settlement offer by defendants, we do not feel it would be productive to have such a meeting as you have proposed."

### III. Purpose of these Chapter 11 Cases

22. The purposes of these chapter 11 cases are to resolve the Delaware Action and to formulate a joint chapter 11 plan that results in an equitable distribution to holders of allowed claims against the Debtors.

23. The Debtors have significant assets which can be used to formulate a chapter 11 plan, including proceeds to be collected from the anticipated sale of the Debtors' equity interest in a Chinese joint venture to the joint venture partner, Ansteel Industry Group Co., proceeds to be collected from the sale of an acid regeneration plant to a Chinese company in the amount of $300,384, proceeds to be collected from the sale of the Debtors' Indian Branch to its former employees, and insurance proceeds to be collected relating to the recovery of the Debtors' $250,000 deductible payment resulting from the Debtors' 2016 main office fire.

24. Without these chapter 11 cases, ongoing litigation of the Delaware Action has potential to extract all remaining value of the Debtors through legal expenses alone, thereby preventing an equitable distribution to holders of allowed claims against the Debtors.

*[The remainder of this page was intentionally left blank.]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: 1/21/2020

Malvin G. Sander
Senior Vice President, General Counsel & Secretary
SSW Holding, Inc.
SSW, Inc.
SSW Company
SSW International, Inc.
SSW Partnership